# EXHIBIT A

## InterestFirst℠ NOTE

April 28, 2006                Township of Jefferson                NJ
[Date]                               [City]                               [State]

8 Abbott Drive
Township of Jefferson, NJ 07849-1129
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $285,700.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Quicken Loans Inc.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 7.125 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

**(A) Time and Place of Payments**

I will make a payment every month. This payment will be for interest only for the first 120 months, and then will consist of principal and interest.

I will make my monthly payment on the 1st day of each month beginning on June 1, 2006. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest it will be applied to interest before Principal. If, on May 1, 2036, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 530483, Livonia, MI 48153-0483
or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $1,696.84 for the first 120 months of this Note, and thereafter will be in the amount of U.S. $2,236.52. The Note Holder will notify me prior to the date of change in monthly payment.

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment

unless the Note Holder agrees in writing to those changes. However, if the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest as well as during the time that my payments consist of principal and interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, the amount of my monthly payment will not decrease; however, the principal and the interest required under this Note will be paid prior to the Maturity Date.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of Fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of interest and/or principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

 

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ 04/28/2006 (Seal)    _____ 04/28/2006 (Seal)
Jeffrey A. Doran        -Borrower           Tracy L. Doran         -Borrower

HSBC Bank USA, National Association, as Trustee for the registered holders of the Merrill Lynch Mortgage Investors, Inc., Mortgage Pass-Through Certificates, Series 2006-AF1

_____ (Seal)               _____ (Seal)
                        -Borrower                                   -Borrower

WITHOUT RECOURSE
Pay To the Order of _____

QUICKEN LOANS, INC.
By_____
SCOTT JOHNSON
CAPTURE MANAGER

_____ (Seal)               _____ (Seal)
                        -Borrower                                   -Borrower

[Sign Original Only]

-836N (0210)                Page 3 of 3                    Form 3271 1/01

RECORDING REQUESTED BY:
Bank of America, N.A.
6860 Argonne St, Unit A
HOME RETENTION
Denver, CO 80249

Investor Loan # _____████████_____

This document was prepared by _____

_____Space Above This Line For Recording Data_____

## LOAN MODIFICATION AGREEMENT

Borrower ("I"):[1] Jeffrey A Doran and Tracy L Doran

Original Lender/Beneficiary Lender or Servicer ("Lender"): Bank of America, N.A.
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): April 28, 2006
Loan Number: ████████████
Property Address: (See Exhibit A for Legal Description if applicable)
"Property": 8 Abbott Drive, Township of Jefferson, NJ 07849
See Exhibit B for assignments of record if applicable

If my representations and covenants in Section 1 continue to be true in all material respects, then this Loan Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (i) the Mortgage on the Property, and (ii) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously

---

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations and Covenants.** I certify, represent to Lender, covenant and agree:

    A. I am experiencing a financial hardship, and as a result, (i) the Loan is in default or a default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future.

    B. There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A Permissible change would be any transfer that the lender is required by law to allow.

    C. I have provided documentation for all income that I receive and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for this Loan Modification ("Modification").

    D. Under penalty of perjury, all documents and information that I (or any third party on my behalf) have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct.

    E. All payments required under the trial period plan or loan workout plan have been made.

    F. I was discharged in a Chapter 7 Bankruptcy proceeding subsequent to the execution of the Loan Documents. Based on this representation, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

    A. If prior to the Modification Effective Date as set forth in Section 3 below, Lender determines that any of my representations in Section 1 above are no longer true and correct, or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, Lender will have all of the rights and remedies provided by the Loan Documents, subject to applicable law.

    B. The Loan Documents will not be modified unless and until (i) I return signed and notarized copies of this Agreement to Lender, (ii) the Lender accepts this Modification by signing it, and (iii) the Modification Effective Date (as defined in Section 3 below) has occurred. Lender will not be obligated to modify the Loan Documents if I fail to meet any of the requirements under this Agreement.

3. **The Modification.** If all of my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 above have been met, the Loan Documents will automatically become modified on February 1, 2020 (the "Modification Effective Date"). I understand that if any payments required as a precondition to this modification under a trial period plan or loan workout plan have not been made, this modification will not take effect.

    A. The Maturity Date will be: May 1, 2036.

    B. The modified principal balance of the Note will include all amounts and arrearages outstanding as of the Modification Effective Date (including unpaid and deferred interest, fees, charges, escrow advances, and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to Lender but not previously credited to my Loan. The new principal balance of the Note will be $284,418.51 (the "New Principal Balance"). Any fees or charges incurred in connection with the servicing of this loan which were not invoiced before we calculated the Unpaid Amounts will appear on your monthly statement under "Fees and Charges." These amounts may be paid when billed or at any time afterward. They will not accrue interest or late fees. If they remain unpaid, they must be satisfied, subject to applicable law, at the earlier of: (i) the date you sell or transfer an interest in the Property, (ii) the date the entire New Principal Balance is paid, or (iii) the Maturity Date. I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means that interest will now accrue on the unpaid interest that is added to the

outstanding principal balance, which would not happen without this Agreement.

C. Interest at the rate of 5.000% will begin to accrue on the New Principal Balance as of January 1, 2020 and the first new monthly payment on the New Principal Balance will be due on February 1, 2020. The payment schedule for the modified Loan is as follows:

| Months | Interest Rate | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On |
|---|---|---|---|---|---|
| 196 | 5.000% | $2,126.28 | May adjust periodically $992.91 | May adjust periodically $3,119.19 | 02/01/2020 |

*If escrow payments are collected by Lender, Lender may adjust such payments periodically in accordance with applicable law. Therefore, my total monthly payment may change accordingly.

The terms in this Section 3.C. supersede any provisions to the contrary in the Loan Documents, and previous loan modifications including (but not limited to) provisions for an adjustable or interest-only rate.

If this is a pay-option adjustable-rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only option, or any other payment option will no longer be offered. As a result, the monthly payments described in the above payment schedule for the modified loan will be the minimum payment that will be due each month for the remaining term of the loan. The modified loan will not allow negative amortization, which would have (i) allowed payments that are less than the interest and principal due and (ii) resulted in the unpaid interest added to the outstanding principal balance.

D. Subject to applicable law, I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

4. **Additional Agreements.** Lender and I agree to the following:

A. All persons, or their authorized representative(s), who signed the Loan Documents have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, meaning that the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse, subject to applicable law, may continue to be held liable for the obligation under the Loan Documents); or (iii) Lender has waived this requirement in writing.

B. This Agreement supersedes the terms of any modification, forbearance, trial period plan, or loan workout plan that I previously entered into with Lender.

C. I will comply, except to the extent that they are modified by this Agreement or applicable law, with all covenants, agreements, and requirements of the Loan Documents, including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may periodically change over the term of my Loan.

D. That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms unless otherwise modified by law.

E. All terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents. Except as otherwise specifically provided in, and as expressly modified by, this Agreement, Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents, subject to applicable law.

F. I will, subject to applicable law, pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this subsection. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and

agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this subsection.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

G. On and after the Modification Effective Date, and notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules, or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I all sums secured by the Mortgage must be paid. If these sums are not paid prior to the expiration of this period, Lender may, subject to applicable law, invoke any remedies permitted by the Mortgage without further notice or demand.

H. On and after the Modification Effective Date, Lender will allow the transfer and assumption of the Loan, including this Agreement, only to a transferee of my property as permitted under the Garn-St Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. On and after the Modification Effective Date, any provision in the Note (or in any addendum or amendment to the Note) that allowed for the assessment of a penalty for full or partial prepayment of the Note, is null and void.

J. I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by Lender's procedures to ensure that the modified mortgage loan is in first-lien position and/or is fully enforceable upon modification. Under any circumstance and not withstanding anything else to the contrary in this Agreement, if Lender does not receive such title endorsement(s), title insurance product(s), and/or subordination agreement(s), the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void. I will allow Lender to attach an Exhibit to this Loan Modification that will include a Legal Description, recording information of the original security instrument, and any other relevant information required by a County Clerk's Office to allow for recording if and when recording becomes necessary for Lender.

K. I will execute such other documents as may be reasonably necessary either to (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. A corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign such corrected Agreement, the terms of the original Loan Documents, or the most recent modified terms currently in effect, shall continue in full force, and the terms of the original Loan Documents, or the most recent modified terms currently in effect, will not be modified by this Agreement.

L. OPTIONAL PRODUCTS PURCHASED AFTER CLOSING. Any optional product(s) I may have purchased after the closing of my Loan, the cost for which I agreed to have added to my Total Monthly Payment, will (i) remain in force as long as I add the amount due and owing to my Total Monthly Payment each month and (ii) continue to be governed by the terms of the documents the provider of the optional product delivered to me ("Governing Documents"), unless I (a) notify the provider of the optional product of my request to cancel; or (b) fail to pay any and all amounts payable when due, at which time the optional product may terminate as provided under the Governing Documents.

M.  If any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with Lender's request to execute, acknowledge, initial and deliver to Lender any documentation Lender deems necessary. If the original promissory note is replaced, Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents that Lender requests of me under this 4.M. shall be referred to as the "Documents." I will deliver the Documents within 10 days after I receive Lender's written request for such replacement.

In Witness Whereof, the Lender and I have executed this Agreement.
(Signatures must be signed exactly as printed, original signature required and no photocopies accepted.)

SIGN HERE ▶ _[signature]_
Jeffrey A Doran
(Must be signed exactly as printed)
01 / 17 / 2020
Signature date (MM/DD/YYYY)

SIGN HERE ▶ _[signature]_
Tracy L Doran
(Must be signed exactly as printed)
01 / 17 / 2020
Signature date (MM/DD/YYYY)

[redacted]

**DO NOT WRITE BELOW THIS LINE.**
*********************************************************************************
THIS SECTION IS FOR INTERNAL USE ONLY

Bank of America, N.A., for itself or as successor by merger to BAC Home Loans Servicing, LP By: Mortgage Connect Document Solutions, LLC, its attorney in fact

By: _____

Name:
Title:  **Stephanie Casillas**

**Assistant Secretary**

JAN 2 3 2020
———————
Date